**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:19-cv-3231

CHARLIE MCTAVISH,

Plaintiff,

v.

JUNIOR ACHIEVEMENT USA,

Defendant.

---

**COMPLAINT AND DEMAND FOR JURY TRIAL**

---

Plaintiff Charlie McTavish, by her attorney Mary Jo Lowrey of Lowrey Parady, LLC, files this Complaint and Demand for Jury Trial against Defendant Junior Achievement USA ("Defendant" or "JA"), and complains as follows:

**INTRODUCTION**

1. Plaintiff Charlie McTavish is a former JA employee who suffers from posttraumatic stress disorder ("PTSD"), which causes her to experience extreme anxiety and panic attacks in response to various "triggers" in her environment. Ms. McTavish informed JA of this condition when she was hired, and JA agreed to provide reasonable accommodations for her disability. Despite being aware of her condition, Ms. McTavish's coworkers and supervisors regularly invaded her privacy and criticized her "attitude," a proxy for symptoms related to her disability. When Ms. McTavish complained about these issues, JA only increased its scrutiny of Ms. McTavish's performance and presented her with an exhaustive list of complaints about her disposition

from her coworkers. JA failed to provide sufficient accommodations for Ms. McTavish's disability, and eventually constructively discharged her, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*.

**PARTIES**

2. Plaintiff McTavish is a resident of and domiciled in Colorado. Her present address is 428 S. Sherman St. #1, Denver, CO 80204.

3. Defendant JA is a Colorado nonprofit corporation with a principal office street address of One Education Way, Colorado Springs, CO, 80906.

4. Defendant JA employed Ms. McTavish at its principal place of business from May 30, 2017, until September 18, 2018.

**JURISDICTION AND VENUE**

5. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, and 28 U.S.C. § 1343(a)(3) and (4), which grant original jurisdiction to the Federal District Court in actions which arise under federal civil rights laws. Specifically, this Court has jurisdiction because Ms. McTavish alleges violations of her rights under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*.

6. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b). A substantial part of the events and/or omissions giving rise to Ms. McTavish's claims occurred within the jurisdiction of the United States District Court for the District of Colorado and JA resides therein.

**ADMINISTRATIVE EXHAUSTION**

7. Ms. McTavish has complied with all administrative, jurisdictional and legal prerequisites to the filing of this action.

8. Ms. McTavish timely filed a Charge of Discrimination with the EEOC, Charge No. 541-2018-02419, on October 18, 2018, alleging disability discrimination, including failure to accommodate and a hostile work environment. Ms. McTavish amended her Charge on April 2, 2019, to include a claim of retaliation.

9. The EEOC mailed Ms. McTavish a Notice of Right to Sue on August 16, 2019.

## GENERAL ALLEGATIONS

10. Ms. McTavish was hired by JA on May 30, 2017, as the Stewardship Manager.

11. JA had more than 20 employees at all relevant times.

12. Ms. McTavish suffers from posttraumatic stress disorder ("PTSD").

13. Ms. McTavish's PTSD substantially limits many of her major life activities, including but not limited to breathing, concentrating and working, and constitutes a disability under the ADA.

14. Ms. McTavish informed JA of her disability at the time she was hired and requested JA make reasonable accommodations to allow her to successfully perform the essential functions of her position.

15. JA agreed to accommodate Ms. McTavish's disability by allowing her to (i) make occasional adjustments to her work hours for therapy appointments or to cope with her symptoms, (ii) bring her service dog to work with her, and (iii) take breaks in a "safe" room when her symptoms were triggered.

16. Although JA agreed to these accommodations, as Ms. McTavish began working at JA she discovered additional accommodations were needed in order for her to be successful.

17. Ms. McTavish's coworkers repeatedly tried to interact with her service dog, Rogue, even after she requested that they simply ignore the dog while she was wearing her service vest.

18. Additionally, the "safe" rooms provided for Ms. McTavish could not be locked, and therefore her coworkers sometimes walked in on her while she was having panic attacks.

19. JA failed to properly engage in the interactive dialogue with Ms. McTavish and to provide Ms. McTavish with additional reasonable accommodations that she requested after her initial hiring.

20. Ms. McTavish requested a quiet cubicle or other work area with a desk facing the entrance to prevent her coworkers from startling her by approaching her from behind.

21. Ms. McTavish was told that her cubicle could not be rearranged so that the desk faced the entrance.

22. Ms. McTavish was not permitted to move to a cubicle that was in a quieter location.

23. JA often required Ms. McTavish to implement her requested accommodations which led to misunderstandings and negatively feelings from Ms. McTavish's coworkers who did not understand that what she was requesting of them were approved accommodations for her disability.

24. JA's actions revealed a bias against Ms. McTavish because of her disability.

25. Despite these difficulties, Ms. McTavish received an excellent performance review in December 2017.

26. On June 5, 2018, Ms. McTavish's supervisor, Kris Ponciroli, presented Ms. McTavish with a "behavior performance plan" ("the performance plan"), allegedly to address Ms. McTavish's "unprofessional, rude and disrespectful behaviors."

27. The performance plan specifically referenced the reasonable accommodations for Ms. McTavish's disability and implied that she had been insufficiently grateful for JA's compliance with the ADA.

28. The performance plan did not identify a single example of Ms. McTavish failing to complete her work or submitting unsatisfactory work; rather, it focused solely on her coworkers' perceptions of her disposition at the office.

29. Other employees made rude comments or had unpleasant attitudes in the workplace, but were not disciplined or reprimanded for those incidents.

30. The performance plan is clear evidence of the discriminatory animus against Ms. McTavish because of her disability.

31. On June 6, 2018, Ms. McTavish met with Ms. Ponciroli and Lisa Frye, VP of Employment/Employee Relations, to discuss the performance plan and how Ms. McTavish could continue to succeed in her position. During that meeting, Ms. McTavish stated that she believed the allegations in the performance plan were related to the symptoms of her disability and her attempts to cope with her disability, rather than her ability to perform her job.

32. During another meeting the following week, Ms. Ponciroli once again warned Ms. McTavish that while JA would continue to make reasonable accommodations for her disability, Ms. McTavish needed to maintain a "respectful, kind mood, even when triggering."

33. On June 29, 2018, Ms. Ponciroli and Ms. Frye informed Ms. McTavish that JA intended to contact her therapist directly to understand how Ms. McTavish could "better interact" in her work environment.

34. In order to do so, Ms. Frye asked Ms. McTavish to sign medical records release forms that would have given JA access to Ms. McTavish's complete medical file, including all of her therapist's notes.

35. Ms. McTavish refused to sign these unnecessarily broad medical records release forms.

36. Ms. Frye's and Ms. Ponciroli's treatment of Ms. McTavish constitutes harassment based on her disability.

37. On July 9, 2018, Ms. McTavish complained to Tim Greinert, Senior Vice President of Development, and Leslie Pierce, Senior Vice President of Talent and Organization Development, that JA's constant scrutiny and criticisms regarding her disposition, including the performance plan and required follow-up meetings, were directed at her because of her disability and were creating a hostile environment. She noted that these issues were exacerbating the symptoms of her disability and causing her to feel unsafe at work.

38. In particular, during the July 9, 2018 meeting Ms. McTavish complained about the discriminatory treatment she received from Ms. Ponciroli and Ms. Frye.

39. After Ms. McTavish's July 9, 2018 complaint of discrimination, Ms. Frye conducted an investigation of Ms. McTavish's complaint.

40. On August 23, 2018, Ms. Frye and Mr. Greinert met with Ms. McTavish to discuss the results of Ms. Frye's investigation into Ms. McTavish's complaints. They also gave Ms. McTavish a copy of the full report Ms. Frye prepared.

41. Ms. Frye alleged that Ms. McTavish's claims of discrimination and harassment were unsubstantiated. The report focused exclusively on Ms. McTavish's disposition in the workplace and did not identify any examples of poor performance by Ms. McTavish. Nonetheless, the report concluded that Ms. McTavish was "refusing to do her job according to our expectations."

42. After the investigation, JA continued to subject Ms. McTavish to intense scrutiny.

43. For example, Ms. Ponciroli reprimanded Ms. McTavish for looking at her cell phone during a meeting. Other employees were not reprimanded for the same conduct.

44. Ms. McTavish learned from one of her coworkers that Ms. Frye was inspecting her cubicle while Ms. McTavish was out of the office one day.

45. JA's ongoing scrutiny and harassment caused the symptoms of Ms. McTavish's PTSD to worsen significantly.

46. Ms. McTavish's work environment became so intolerable that she constructively discharged from her position on September 18, 2018.

**FIRST CLAIM FOR RELIEF**
**Failure to Accommodate in Violation of the Americans with Disabilities Act**
**42 U.S.C. § 12101, *et seq.***

47. Ms. McTavish incorporates all foregoing and subsequent paragraphs of this Complaint as if fully set forth herein.

48. As a person with PTSD, Ms. McTavish has a disability under the ADA.

49. JA was Ms. McTavish's employer.

50. Ms. McTavish is a qualified person with a disability who was able to perform all of the essential functions of her job with or without reasonable accommodations.

51. Ms. McTavish requested reasonable accommodations including a secure, quiet room in which she could recover when her symptoms were triggered, as well as a quiet cubicle or other work area with a desk facing the entrance to prevent her coworkers from startling her.

52. JA could accommodate Ms. McTavish without undue hardship.

53. JA failed to provide Ms. McTavish's with her requested accommodations and did not provide her with a reasonable alternative accommodation.

54. The "safe" rooms provided for Ms. McTavish could not be locked, which allowed her coworkers to enter while she was recovering from panic attacks.

55. Ms. McTavish was told that her cubicle could not be rearranged so that the desk faced the entrance and that she could not move to a cubicle in a less trafficked area.

56. JA constructively discharged Ms. McTavish as a result of its failure to accommodate her.

57. As a direct and proximate cause of Defendants' discriminatory actions and conduct, Ms. McTavish suffered, and will continue to suffer damages including, but not limited to, loss of salary wages, earnings and benefits; diminution of future earning

capacity, loss of accumulated benefits, emotional distress and other compensatory damages in amount to be determined at trial; punitive damages in an amount to be determined at trial; and attorney fees and costs.

**SECOND CLAIM FOR RELIEF**
**Disability Discrimination in Violation of the Americans with Disabilities Act**
**42 U.S.C. § 12101, *et seq.***

58. Ms. McTavish incorporates all foregoing and subsequent paragraphs of this Complaint as if fully set forth herein.

59. JA subjected Ms. McTavish to a discriminatory hostile work environment.

60. JA discriminated against Ms. McTavish by targeting her for discipline, criticizing her behavior including symptoms of her disability and placing her on a discriminatory performance plan.

61. JA constructively terminating Ms. McTavish's employment.

62. As a direct and proximate cause of JA's discriminatory actions and conduct, Ms. McTavish suffered, and will continue to suffer damages including, but not limited to, loss of salary wages, earnings and benefits; diminution of future earning capacity, loss of accumulated benefits, emotional distress and other compensatory damages in amount to be determined at trial; punitive damages in an amount to be determined at trial; and attorney fees and costs.

**THIRD CLAIM FOR RELIEF**
**Retaliation in Violation of the Americans with Disabilities Act**
**42 U.S.C. § 12101, *et seq.***

63. Ms. McTavish incorporates all foregoing and subsequent paragraphs of this Complaint as if fully set forth herein.

64. Ms. McTavish engaged in protected activity under the ADA on multiple occasions by opposing discriminatory and retaliatory practices and conduct directed at her by JA's employees and managers, including discrimination and harassment based on her disability.

65. Ms. McTavish engaged in a protected activity under the ADA by requesting reasonable accommodations.

66. As a result of Ms. McTavish's protected opposition to discrimination and harassment, and her repeated request for reasonable accommodations JA began a pattern of retaliatory conduct against Ms. McTavish by subjecting her to the different terms and conditions of employment described in this Complaint.

67. JA retaliated against Ms. McTavish by having Ms. Frye, who Ms. McTavish complained had engaged in harassment against Ms. McTavish, conduct an investigation of Ms. McTavish's complaint of discrimination.

68. JA retaliated against Ms. McTavish by constructively terminating her employment.

69. As a direct and proximate cause of JA's retaliatory actions and conduct, Ms. McTavish suffered, and will continue to suffer damages including, but not limited to, loss of salary wages, earnings and benefits; diminution of future earning capacity, loss of accumulated benefits, emotional distress and other compensatory damages in amount to be determined at trial; punitive damages in an amount to be determined at trial; and attorney fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully prays that this Court grant the following relief:

A. Injunctive and declaratory relief,

B. Actual economic damages in such amount as shall be proven at trial for back-pay, lost benefits, wages, promotions, tenure, seniority, and other employment opportunities; reinstatement or front pay in lieu of reinstatement,

C. Compensatory damages including, but not limited to, emotional distress, suffering, mental anguish, loss of enjoyment of life, and other nonpecuniary losses,

D. Pre-judgment and post-judgment interest,

E. Attorney's fees, costs and expenses, and

F. Any other relief justice requires and law or equity allows.

## JURY TRIAL DEMAND

The plaintiff hereby requests a jury trial on all questions of fact raised by this Complaint.

Respectfully submitted this 14th day of November, 2019.

**LOWREY PARADY, LLC**

*/s/ Mary Jo Lowrey*
Mary Jo Lowrey
1725 High Street, Suite 1
Denver, CO 80218
Phone: 303-593-2595
Fax: 303-502-9119
Email: MaryJo@lowrey-parady.com
*Attorney for Plaintiff*